## MACON, DUBLIN & SAVANNAH RAILROAD CO. *v.* CALHOUN.

1. That part of the act approved October 6, 1909 (Acts 1909, p. 279), abolishing the city court of Mount Vernon, which provides for the transfer of all cases from that court to the superior court, does not contravene art. 1, sec. 4, par. 1, of the constitution of this State (Civil Code, § 6391), which provides that "no special law shall be enacted in any case for which provision has been made by an existing general law. No general law affecting private rights shall be varied in any particular case by special legislation."
2. Nor does the above-recited act violate art. 6, sec. 9, par. 1, of the constitution (Civil Code, § 6527), which provides for uniformity of procedure and practice in all courts of the same grade and class.

MAY 15, 1912.

Questions of constitutional law; from Court of Appeals. 3519.

The Court of Appeals has certified to the Supreme Court the following questions:

"1. Is that part of the act approved August 6, 1909 (Acts 1909, p. 279), abolishing the city court of Mount Vernon, which provides for the transfer of all cases from that city court to the superior court, and for the trial of them in the superior court, unconstitutional because violative of article 1, sec. 4, par. 1, of the constitution of Georgia (Civil Code (1910), § 6391), which provides that 'no special law shall be enacted in any case for which provision has been made by an existing general law. No general law affecting private rights shall be varied in any particular case by special legislation.'? In this connection, counsel presenting the constitutional question make the point that there are general laws which provide for the institution and trial of suits in the superior court, among others the following, which are repugnant to the special scheme contemplated by the act in question: 'All suits in the superior courts shall be by petition to the court. To every petition the clerk shall annex a process requiring the appearance of the defendant at the return term of the court. All suits must be filed with the clerk at least twenty days before the return term thereof. Process returnable to said superior courts must be served upon the defendant at least fifteen days before the return term.. No trial in any civil case shall be had at the first term.'

"2. Is the above-recited act unconstitutional because it is violative of article 6, sec. 9, par. 1, of the constitution of Georgia (Civil Code (1910), § 6527), which provides that the proceedings

and practice of all courts of the same grade and class, so far as regulated by law, shall be uniform, on the ground that the act in question provides a different method of proceedings and practice in the institution and trial of a case in a superior court from that provided by general law, differing in this respect from the following (among other) general laws: 'All suits in the superior courts shall be by petition to the court. To every petition the clerk shall annex a process requiring the appearance of the defendant at the return term of the court. All suits must be filed with the clerk at least twenty days before the return term thereof. Process returnable to said superior courts must be served upon the defendant at least fifteen days before the return term. No trial in any civil case shall be had at the first term.' ?"

*Minter Wimberly, Akerman & Akerman,* and *W. L. Wilson,* for plaintiff in error. *M. B. Calhoun* and *Eschol Graham,* contra.

ATKINSON, J. 1. It is provided in art. 6, sec. 1, par. 1, of the constitution of this State (Civil Code, § 6497): "The judicial powers of this State shall be vested in a Supreme Court, a Court of Appeals, superior courts, courts of ordinary, justices of the peace, commissioned notaries public, and such other courts as have been or may be established by law." A different section of the same article of the constitution provides: "All courts not specially mentioned by name in the first section of this article may be abolished in any county, at the discretion of the General Assembly." Art. 6, sec. 20, par. 1 (Civil Code, § 6549). Thus it appears from section 1 that the General Assembly has power to create other courts than those specially mentioned therein by name, and therefore power to create city courts, and from section 20 that the General Assembly has power to abolish such courts as are not specially mentioned in section one, and therefore has power to abolish city courts, as they are not specially mentioned by name in section one. The city court of Mount Vernon was established by the act approved August 15th, 1906 (Acts 1906, p. 288), and was merely a statutory court, which could be abolished at the pleasure of the General Assembly. When in the exercise of such power a law is enacted abolishing such a court, it is necessary to make some provision for the disposition of the business pending in the court at the time of its abolition. No express reference to such necessity is made in the constitution, but as an incident to and growing out

of the power to abolish the court there is the power to provide for the disposition of the pending business. In other words, such power is necessarily implied from those which are expressed. It is not essential to the exercise of the implied power that on abolition of the statutory court the General Assembly should create some other court to dispose of the unfinished business. It could just as well transfer such business to some existing court having jurisdiction. In such cases the transferred business would be disposed of under the rules of procedure and practice of the court to which it was transferred. See *Brooks* v. *Mair,* 107 *Ga.* 738 (33 S. E. 650). In view of this affirmative grant of power by the constitution, it can not be said that the legislation in question is violative of the clause of the constitution mentioned in the first question propounded by the Court of Appeals. Moreover, there is no general law covering the method of disposing of unfinished business pending in statutory courts at a time when by law they might be abolished. That is a matter which the General Assembly has seen fit to deal with separately as occasion arises. It is contended that the provisions recited in the first question relative to the manner in which suits in the superior courts shall be instituted and served and the time of their trial are general laws applicable to all cases, and hence the existence of them would prevent the enactment of other laws providing for the transfer to the superior court and trial therein of cases which had been originally instituted in a city court. The laws mentioned are general laws, but they refer to the institution, service, and time of trial of suits which might be originally instituted in the superior court, and were not designed to relate to the manner of transferring and the time of trial of any case instituted in a statutory court which the General Assembly, upon abolition of such court, might see fit to have transferred for trial in the superior court.

2. The act referred to in the preceding division does not violate that part of the constitution which provides for uniformity of procedure and practice in all courts of the same grade and class. Laws providing for the transfer of cases for trial in the superior court do not in any manner affect the rules of procedure and practice of the superior courts. This is merely an instance of where the legislature, in the exercise of constitutional authority, transfers cases to the superior court for trial under the existing procedure

and practice of that court, without any suggestion of a change of procedure in that particular court.

It follows that both of the questions propounded by the Court of Appeals should be answered in the negative.

*All the Justices concur.*